The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armand presiding. Morning, Counsel. We'll call 4-22-0708, People of the State of Illinois v. Daniel Suttner. Could Counsel for the Appellant please state your name for the record? Good morning, Your Honor. This is Gregory Peterson of the Office of the State Appellate Defender. Morning, Mr. Peterson. Could Counsel for the Appellee please state your name for the record? Allison Paige Brooks on behalf of the people. Morning, Ms. Brooks. Counselor for the Appellant, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. My name is Gregory Peterson. I work for the Office of the State Appellate Defender, and I represent Daniel Suttner in this matter. I asked for oral argument on the second and third issues in my brief, so I'm happy to answer this Court's questions about anything that was briefed. This is a matter of statutory interpretation, and it concerns four different provisions across the Illinois Criminal Code, three of which have been already interpreted to exclude what would now be juvenile adjudications. We have subsection B of the general recidivism provision that says that an offense that contains the same elements as an offense now classified as a Class II or you have subsection A of that same general recidivism provision containing the same elements as an offense now classified as an ex or higher. That's this Court's decision post-Stewart in O'Neill. Then in the armed habitual criminal statute, you have any drug offense that is punishable as a Class III felony or higher. That's the First District's decision in Gray. And criminal sexual assault, we have any offense involving criminal sexual assault that is substantially equivalent to or more serious than the assaults prohibited in subsections 3 and 4. All four of these sections use the present tense. All four of these statutes are talking about not only the elements of what happened in the past, but the age that the defendant was at the time. Mr. Sutner was 15 in 1991. Under the law as it stands when he committed this offense, a 15-year-old would not be subject to automatic transfer to an adult court. It would not even be presumptively transferred to an adult court. It would presumptively result in a juvenile adjudication. And a juvenile adjudication is not a conviction for any offense involving criminal sexual assault that is now substantially equivalent to or more serious than the sexual assault in question. Mr. Peterson, could I interpose a question? Yes, Your Honor. Going to your third issue, if we agree with your 111.3c argument, do we even need to address your second issue? I don't think you do, Your Honor. The remedy we're asking for is the same here. Under People v. Stewart, if he is statutorily ineligible for a Class X sentence and he was sentenced under the Class X range, that's the end of the matter and resentencing with regard to the proper range is required. So given that it goes to the same remedy, I don't think you would need to reach the statutory interpretation question in two. Talk to us about why it would have to go back because of the notice issue when the defendant was notified, just not in the charging instrument. And his counsel, as the state argues, appears to have acquiesced in that as well. Well, Your Honor, he was notified of the sentencing range. He was never notified in the upgraded class of offense, and that's what the state would need to have done here in order to acquire this Class X sentencing range. It's of course black letter law that the range of sentences for a particular offense is set by statute. The range of sentences for a Class I criminal sexual conviction is 4 to 15 years. So while the state orally told Mr. Sutner at some point that he'd be facing Class X sentencing, it never at any point in the proceedings below told him Class X conviction. Is the record clear on whether he was informed of the exposure to Class X sentencing before or after the three plea offers were made and rejected? I don't believe it was, Your Honor. I'm not perfectly certain on that, but I believe that is an ambiguity in the record. Because he's informed just before trial, is he not? Yes, and that's the only time that he is informed at all. So if there's another plea offer, for instance, that came in during trial, during jury selection, anything like that, I don't know. So at this point, really, we don't know from record whether he was even aware of the potential of Class X sentencing when he rejected the offers. That's correct, Your Honor. And also, we see from Beasley, that I cited at great length in my brief, that even if he was aware of Class X sentencing, an upgrade in sentencing range and an upgrade in class are not the same. So even the just before on the eve of trial notification of this upgrade in sentencing range, it's simply insufficient under Beasley and under the 111.3 statute itself. The state did not have to do much to notify him, and that we see through Ross. But they simply didn't do it. They simply did not give any indication in the charging of Apprendi, for instance. The way to do that is you include a citation or an allegation in the charging instrument. You do not read that part of the charging instrument to the jury, and then you prove it up at sentencing. And you talk about that when you're talking about Ross. That's right. That's right. Because Ross has this bare citation in the charging instrument to the thing that would allow the state to seek the higher actual class of offense. Here, we don't even have that. Although it's not relevant to this case, if it had just been simply a sentencing enhancement, would the same result be required? I don't think so, Your Honor. I think Beasley makes that distinction pretty clear. And honestly, the mine run of cases have moments like that. You prove things up at sentencing all the time that raise the range, although there is an Apprendi issue often. But I think of moments that fall within Apprendi's exception, moments where the thing that raises the range is a prior conviction. You would simply prove that up at sentencing, and there seems to be pretty solid case law saying that that doesn't need to be in the charging instrument. As a defendant, you would need to make some sort of argument, maybe tying it to your plea decision or something like that. State says that when your client's trial counsel asked for the minimum for a class act sentence, that he's effectively waiving any argument and acquiescing to the result. I think you can reject that out of hand, Your Honor. He asked for the minimum, which was six years. He was trying to get the lowest possible sentence for his client. I'm now trying to get lowest possible sentence for my client. There's no moment where counsel below affirmatively achieves something that I'm now using to argue for reversal on appeal. And you see that from the invited error case that I cite in my reply brief, where they essentially break attorney-client privilege at trial and then argue for reversal based on the breaking of the attorney-client privilege. Here, asking for the minimum sentence, if that's invited error, then pleading not guilty is invited error in terms of whether the charge was correct or not. You're saying, I want the minimum in this range. Well, you're saying, I want the minimum that I can get for my client. And here, counsel had the range wrong. And under Stewart, that's plain error right there. Go ahead. I'm sorry. Well, with the knowledge that argument three can resolve the matter, I would simply say, I would understand if this court is leery of approaching this provision of the criminal sexual assault statute as a matter of first impression. This court would not be the first post-Stewart to apply the reasoning and logic of Stewart to another statute. The first district has done that in Gray. And frankly, this court in O'Neill after Stewart in the remand applied it to identical language, but a different provision. And it's the district split that arose with Miles and Williams on the first district side and Reed, and to some extent later, irrelevant on the fourth district side. Stewart has resolved that split. The present tense language says, we essentially consider the age that someone is when they do something as an element of the offense for these purposes. And it's not that everything done by an under 18-year-old would not be able to count as a criminal conviction. The key here is that the legislature raised the age. And so as a 15-year-old, Mr. Sutner would not have his proceedings handled in adult criminal court these days, even though as a 16-year-old, he still would. If you went on 111C3C, do you get anything other than the resentencing? No, Your Honor. We're asking for resentencing here. In order to ask for a new trial, I believe we'd need to wait on issue one. Okay. You want to talk to us about issue one? Briefly, Your Honor. The key here is the case agent, as case agents often do, provides the last bit of testimony in the case. And he walks the jury through the course of his investigation. Frankly, this is normal. This is something that happens at many criminal trials. But then he's also essentially allowed to say, I talked to all of the other witnesses outside of court, and they all agreed with me. And this is a credibility of CS, of the girl, is crucial. Her wobbly testimony on the stand, her inconsistent testimony on the stand, in a case where weighing that is absolutely vital to the jury's decision, the case agent said, well, I talked to her back then out of court. And what she told me, I can tell you now, jury, I'm the guy that knows this case, supports a finding of guilt. So did he say that it was consistent? I'm sorry, go ahead. I was just going to ask, is there anything in the testimony that you think that was improperly admitted, that provided information that wasn't essentially provided by the defendant's own statement, by his own admission? By part of it, by some part of his admission, Your Honor, no. But he told multiple stories. Over the course of this trial, he told multiple stories. The jury was not simply relying on one statement. It was relying on one statement among many and choosing which one to believe. So here, even if it is repetitive, it's not consistent. And so, it's not cumulative, because it's affecting that balance. Wasn't that equally true of the victim's testimony, that there were a number of inconsistencies that are then brought out by some of these other statements, which wouldn't be reasonable to assume since it is a credibility case, the defense counsel as a matter of trial strategy, wants all of those other inconsistencies brought out to the jury. Given, Your Honor, I'm trying to understand your question. I don't know if I quite follow. And it wasn't the greatest question, so it's not your fault. The victim's statements about when things occurred, and whether this was the first time, or was there another incident, and where was that incident? Those sort of statements were referred to, not just by herself, but by other people, were they not? That's right. Okay. So would that not be reasonable to believe that trial counsel, as a tactical decision, rather than objecting to the references to these other statements, wants them all coming in, because it just creates more confusion? I don't think that's reasonable trial strategy, Your Honor, because what the case agent said was supportive of guilt. So it is... He says he, didn't he say, it looked to me, if I recall correctly, that the way the question was asked was whether the information he obtained was consistent with what the defendant said, and the victim said. It seemed like they were always together, weren't they, in the question? His response is a general yes. It doesn't really clarify, oh, I'm talking only about the victim, I'm talking only about the defendant. It seemed like it was a compound question. Was it consistent with what the defendant said and the victim said? And he says yes. I think the natural way, Your Honor, to understand the sense that that would have been given by the jury is, was it consistent with your theory of the case, the theory of It's at the very end of this agent's long testimony, and he said, and he gets to say, well, what she told me was consistent with all of the incriminating things I'd heard to that point. And I get the significance of the way you're wording, but it seems to me that the question isn't quite that specific. Your Honor, I'm getting it here. Go ahead. In your discussions with her, did she divulge sexual contact between herself and the defendant? Yes. Did she dissolve sexual content between herself and the defendant when she was under 18 years of age? Yes, she did. And were her statements to you corroborated by your interview of the defendant as well as your view of the cell phone evidence in this case? Yes. Meaning they were consistent? Yes, they were consistent. Taking those four question answers together, and that's page 320 of the ROP or 11 and 12 of my opening brief, I think the natural meaning to ascribe to that question and answer was, did she say he did this crime? And given that that is out of the question. Your Honor, the client said that. I guess that's kind of where we're coming from, is that once he essentially admits the offense and does so probably unwittingly by acknowledging that, well, it occurred at this particular point in time. I mean, this guy's got to be the most unfortunate defendant I've seen in quite a while. He only missed it by a few days. And yet he missed it. And he did so by his own admission. Once he does that, really, what does the rest of it matter? Well, Your Honor, I will acknowledge that I did not raise the sufficiency of the evidence here. But this is a case where he says that, and then he says other things. She says her initial story, and then she says other things, including on the stand. And so these hearsay decisions of allowing the case agent, allowing the man who through the course of his testimony has revealed to the jury that he knows this case well, he's in charge, allowing him to say, and everyone else agreed with me, and allowing to say, well, the victim's first story was one supportive of guilt. And even Mr. Sutner's daughter, who did not testify, frankly, about anything that actually goes to the elements of the crime here, even she told me something that is corroborative of her father's guilt. That's the error there. I'm sorry, go ahead. So let's assume there was error. Where's the prejudice? I think the prejudice is from it being this credibility contest, from it essentially being a closely balanced case, even though we're raising this as ineffective assistance of counsel. Without saying that the inclusion of this testimony made or broke the case, I do think that it put the outcome, raised a doubt as to the outcome. And that is enough for Strickland prejudice. But if there are no further questions, I would was prejudicial. Mr. Sutner's age 15 conduct does not render him eligible for a class X conviction and sentence. And even if it did, the state did not tell him. Thank you. All right. I see no questions. Thank you, counsel. Ms. Brooks. Thank you, your honors. May it please the court and counsel. With respect to the issue of the the notice issue, the way this was preceded was was not something that is recognized by Illinois law for this type of prior conviction. The defendant would have received, had it been properly charged, a class X conviction and a class X sentence. The way it seems like the parties and the court all agreed to proceed was to treat this as a class one felony conviction with class X that there is no authority for this type of crime to be sentenced as a class X felony without it being a class X conviction. And when did we start allowing hybrid convictions? Well, I don't know if they sort of assume that this was sort of like class X sentencing, like in a situation where someone had to prior class two or greater convictions. It's still a class two or class one felony, but sentenced as a class X offender. This is not that type of enhancement. This is an enhancement that would have made defendant's offense a class X felony. And that would be why the sentence is a class X felony is because it is a class X felony. But to do so, it had to be properly charged and it was not. But that also meant the defendant ended up with a class one felony conviction, which was an error in his favor. And the other thing is about the claim of ineffective assistance is like, well, if this had not been discussed at all, then the defendant would have a strong argument for for not objecting to being sentenced as a class X offender. Does it really wind up in his favor, Ms. Brooks, if the defense counsel under the status of the point of conviction or the point of sentencing, at least winds up having to argue for a class X minimum versus a class one minimum? Yes. And I'm trying to answer the question, but by posing it this way, had the subject never been brought up before and the defense attorney said nothing, then he would have the argument, a very strong, powerful argument. I probably would have conceded that his class X sentencing as a class X offender would have been improper, that he received ineffective assistance counsel for failing to object. Here is the difference, though. Before trial, the prosecutor stated that this was this class, a six year minimum, 30 year maximum. And the judge asked the defense attorney, do you agree? And he agrees because, well, what do you do in this situation? Because if you're a competent defense attorney who understands that your client has, just setting aside the issue of the statutory interpretation argument, just assume that this prior conviction qualifies regardless of the defendant's age at the time. He does have a prior adult conviction, I mean, treated as an adult under the criminal code. He has a criminal code conviction, prior conviction that would have qualified him for a class X offense. The enhancement would have applied to him. So when the judge asked defendants who has not been charged with a class X felony, it is what the prosecutor said correct. The answer would have been no, your honor, it is not correct. And the question would be, why is not correct? Because my client is charged with a class one felony and the class one felony range is four to 15. The question would be, well, what about this prior class or this prior conviction for aggravated criminal sexual assault that your client has? Your honor, that would have to be charged in the charging instrument. It's not before trial. Yes. I don't mean to take you off course, but how is this helping you? This argument sounds to me like a really good ineffective assistance of counsel claim. Because the answer is because when this subject gets discussed before trial, the prosecution and the trial court both learned that this prior conviction needs to be led the trial court and the prosecution to believe and to understand that this has to be charged as a class X felony in the charging instrument. And when all three participants in the process are wrong, when they, when all three participants, the judge, the prosecution, and the defense are all wrong on the law, the defendant is stuck with what he gets because that's what they decided on. I mean, it would sound to me more like if they're all wrong, then that's plain error. And we go back to square one. Well, it cannot be plain error because the defense invited this by affirmatively agreeing to be proceeding as a sentencing as a class X offense. See, there's where I have the problem from a, from a legal standpoint. If that argument is true, then I agree with the defendant's brief. Then all claims of error just become invited error. Well, he didn't object. Yeah, they did. They didn't submit an alternate instruction. You know, every claim of error becomes an invited error if you're wrong on the law and everybody's wrong on the law. Well, your honor, this is not simply a failure to object. This is the judge before trial and also at the sentencing hearing, asking the defendant affirmatively what the sentencing range is. And when the defendant leads the trial court to sentence him to a, what he asked the state didn't he? And then asked if they agree. Yes. Okay. But agreeing to that is affirmatively directing the course of proceedings to impose a six year, to treat it as a six year minimum sentence. He didn't get six year minimum, but the claim here effective assistance. Of course, if you have an invited error in a situation where it's not just simply a failure to say anything, a failure to object, it is a firmly participating in the direction of proceedings in an erroneous way. Then the defendant has to show ineffective assistance of counsel. And that's why I'm trying to show that because invited error cannot be plain error of plain errors. If they're invited, cannot be rectified under the plain error rule. You have to show ineffective assistance. That's why the judge says this is a death penalty eligible offense and the defendant doesn't say anything. Too bad. No, that, that would not be invited error. If the defendant doesn't say anything, that's the point is that the defendant said that the defense attorney. Okay. Then let's make it a little more. This is a death penalty sentence. The state says, yeah, it is. And court says, counsel, do you agree? The defense counsel says, yep. All right. Too bad. Pull the switch. No, the switch would not be pulled in that situation, your honor, because the defendant could still claim ineffective sense of counsel. So what I'm trying to get to the point is because the defense attorney affirmatively directs this proceeding in an erroneous way by suggesting a, an erroneous class X sentencing range on a class one felony, because it has not been charged as a class X felony. My point is he has to show, can't show plain error because that's invited error. He has to show ineffective assistance of counsel. So the bulk of my argument is why the defendant cannot show ineffective assistance of counsel for agreeing to an erroneous sentencing range on a class one felony. And the distinction here is that because he's charged as a class one felon and asked before trial at a time when this could still be corrected, what is a competent defense attorney who wants to ethically and honestly represent his client's interest to the best of his ability, who understands the law, who knows that this has not been properly charged as a class X felony, even though his client has a qualifying prior conviction. What is a defense attorney supposed to answer when the judge asks, this is a six year, essentially ask the defense for confirmation. Now you're going to get sentenced as a six to 30 range. Is that true? And if he says, no, your honor, it's not true. That leads down to the path of the prosecution charging us as a class X felony because he can't avoid class X sentencing. If he's charged as a class X felony at a time when it can still be charged because the statute allows the state to file an amended charge before trial. So as if the defendants is anything different, this is getting charged as a class X felony. And the issue goes away. In this case, counsel, let's, let's stick to this case. It was charged as a class one. You seem to be carving on exception to Beasley. What arguments finding good, but if you apply Beasley, burdens, not on the defendant to answer one way or the other to whether or not he understands the notice given the burdens on the state to state the sentencing notifications in the charging document. So I guess I, what I'm getting to is, can you apply Beasley and still make your argument? Well, he's not receiving a class X sentence or class X conviction. And the other thing about his case is he received the tenors indicate he's receiving a class X. I'd have to find that on. I just think it was C202. Let me see if I can get that real quick. Give me one second. I may be confusing cases here, but it seems that's class one and yours. C202 in the record. Okay. So, I mean, this was treated as a class one felony sentenced as a class X offense. That's why the air is that's why it's basically an error because it can't be remedied under the flame error because there is no such thing for this statute to be sentenced as a class X offender.  The class X offense, or in this situation, he agreed to an erroneous procedure cannot be remedied under invited error. He has to show ineffective assistance of counsel. And my whole point is he can't show ineffective assistance of counsel because he's being asked to confirm this erroneous procedure at a time when it can still be remedied. It could still be charged as a class X offense because the, the objection would be your honor. My client is charged with a class one felony and a class one felony sentencing range is four to 15. And if you want to get a class X sentence, it has to be charged as a class X felony. And the prosecutor be like, okay, we'll submit a new charge, you know, and amend it under the statute. So, so I understand what you're saying was if he had raised objection, it would have ended up in a bad place for the defendant, right? It would ended up with a class X felony conviction could have ended up in the worst place going the route. He did judge could have him to 20 years. Yes, that's true. But that's a good trial strategy. But the distinction is here is he did receive a sentence that was within the range for class one felony. But you're, you're evaluating it retrospectively. And we're trying to understand what did this attorney do at the time? And your argument seems to be laden with the implication that somehow this led the court down this path, because he was avoiding a worse path for his client. That may be by happenstance, true, but only by happenstance. Well, then if it's not known exactly what the defense attorney's strategy was here, then it had to serve her post conviction, the defendant would have to make the argument of conviction petition, that his attorney was actually unknowledgeable about this, and not just simply strategizing that this is the type of issue that he can sit on is or affirmatively agreed to, which I think would be unethical if he, if he knew that this should have been a four to 15. But realize that, well, actually, if I say something different, my client's going to get a class X felony, and that's not good. So I'm going to leave this issue for him to appeal. If that was his attorney's strategy, which he absolutely could. The only issue is whether in answering the question, do you agree with the state on that? He's stepped outside the lines. Right? Well, I think it was a competent, it's something that a competent attorney could have done. And that's why it's not ineffective assistance of counsel. Because if some competent attorney could have done this, then what whether the defendant did this unknowingly, I mean, if the defendant could have lucked into a good strategy in any other situation, and he doesn't get a new trial, because the attorney didn't know what he was doing. If he had a objectively reasonable strategy, I'm just talking about a hypothetical situation. And it doesn't matter whether the defense attorney knows what he's doing. If he locks into something that is an objectively reasonable strategy, he doesn't get relief under the ineffective assistance of counsel rule, he has to do something that's objectively unreasonable. And I cannot understand how it's objectively unreasonable to tell the prosecutors that they don't have this charge correctly when they can still charge it as a class X felony very easily, and he had would would not be able to avoid it. Instead, he gets what's the difference if he still ends up at six to 30? Well, if it's if it's over 15, he has a and there's no and it's not an extended term eligible, right? But then he gets released that way. You're drawing the idea that he really wants to avoid the X, because he wants to avoid six to 30. So I'm going to agree to six to 30 on the one. Well, I mean, he's got no no good alternative here, because the only thing he could do differently is to give him his client a class X felony conviction instead of class one, because he has the prior conviction. I mean, the statutory argument notwithstanding, time of sentencing, everyone agreed that he was subject to six to 30. Did they not? Yes, they did. Okay, so it's not like he just sort of, you know, kept quiet, because then he knows he's only going to get sentenced for a class one. Oh, no, everybody goes into the sentencing hearing knowing he's subject to six to 30. So what is it that he's winning by this brilliant decision? Well, the point is, if he if the question is, could he have then said no, Your Honor, he wasn't charged as a class one. He's charged as a class one. So it's not actually six to 30. If he objected only at the sentencing hearing, and essentially, sort of like lied to the court about this in the situation, then he's not entitled to ethic unethical representation, the right to effective. There's a lie. Okay, well, if he understands the law about how this was not correctly charged, and it should only be a four to 15. And he still says, in order to prevent this error from being corrected before trial. If he lied to the court, then he can't admit he can't say after trial at the sentencing hearing when it there can no longer be corrected. Oh, Your Honor, it's actually four to 15. Because he wasn't charged as a class x offense. At that point, the judge would then ask him, well, why didn't you tell me that before trial? And he has no answer there that that in any way supports this conclusion that you're reaching? Well, there doesn't have I'm not saying that this attorney lied. I'm not saying that at I'm saying Your Honor is that an ethical attorney who has to cannot change his position after trial when the error can no longer be corrected. That's all I'm trying to say is that you cannot after telling the court, yes, it's six to 30, then get to the sentencing hearing saying no, Your Honor, it's actually only four to 15. I don't believe exactly done that, because it didn't matter at the time he answered that question. It mattered more at sentencing because the judge, I've looked at this again, I don't think it's six to 30. I think you've got to sentence this as a one, he could have absolutely said that without violating his his his ethical responsibilities. In fact, that would have been within his ethical responsibilities to have told the judge the right answer when it mattered. Yes, I understand that. But the point is, is that we have no way of knowing on this record. And that's the question, I guess it was directed to me is how do we know this record and we don't. And that's the point is we don't know if the defense attorney was playing games with the court, who if the defense attorney lied initially about this correct sentencing range to prevent this from being corrected, and then found himself ethically unable to correct that lie. Initially, later on for fear of getting caught, I don't know what the record would show. And the record doesn't show I'm saying I don't know what a post conviction hearing was deciding whether it was invited error, isn't it more important? What set at sentencing than what pre trial? I think they both matter. But yes, I think the the what the statement is sentencing was definitely inviting him to the six year minimum. So at sentencing, the idea that somehow this was an advantage to the defendant kind of evaporates. It's just a mistake. Well, I believe that the defense attorney is stuck with the what was represented before trial. And I don't know that that could be changed. Because we're sure Justice Doherty just gave you a this hypothetical on top of your hypothetical. He gets to sentencing. I mean, now it is important because now he has actually been convicted, he gets to sentencing and the defense attorney jumps up and says, Judge, you know what, I looked into this now that my client was facing sentencing, and I realized now that this is actually only a class one. There's nothing that would prevent him from doing that. Well, that perhaps he couldn't have been prevented from asking for that. But I'm sure the prosecutor at that point would be invoking judicial estoppel to say that the defense had affirmatively agreed to proceed on this case. As a classic sentence. Okay, now you're blowing my mind now. I'm sorry. Well, you can we can now somehow just agree to sentence somebody to a different class than they are subject to by statute. But they agreed. They agreed to have this prosecutor six to 30 sentencing before trial. They relied on that by not amending the charging instrument proceeding to trial and the defense cannot simply change its mind after the fact that would violate. I don't know if you can say they relied on it. That was their position. That was a state's position when they were asked. They were the first ones to say this, right? So it's not as though the defense led them into down the garden path. The state's position was this is a class one with a six to 30 enhancement. Yes, and everybody agreed to proceed this way and to change their their theory after the to say that this was improper after having earlier agreed to it. I do believe in the trial court would have violated to stop all principles. No, not only is the by the air apply on the on appeal, but if the defense attorney had tried to switch the sentencing range at sentencing hearing, the state would have had a very strong argument of estoppel then. So that's why there's no prejudice. So the defendant actually received an error in his favor by receiving only a class one felony conviction and that no matter what the defense attorney would have done, this would have still ended up with either a worse situation, a class X felony and a class X conviction or what he actually got, which was a sentence within the class one felony range. It's coincidentally within as a 10 year sentence. It's in the 4 to 15 range. So the fact that the defense attorney asked for a six year minimum instead of a four year minimum or admitted that there was a 30 year maximum was not prejudicial. So the state would request this court to affirm. Thank you, your honors. Thank you, counsel. Mr. Peterson rebuttal. Briefly, your honor. Everything the state just said applies to Stewart as well. Mr. Stewart received a six year sentence when the proper range was the class two range and six years is within that. He received the minimum sentence that was available. And while I've looked through both the Illinois Supreme Court and the first district's decisions and Stewart, it doesn't explicitly say. I think it's fair to assume that given that he got a minimum sentence, his counsel asked for the minimum sentence of six and not for something lower. Also, footnote two in the Supreme Court's decision, Stewart says that the ineffective assistance in plain error arguments have the exact same contours in this context. In terms of the remedy question of whether the 113 error could result in a new trial, I think the language of Beasley controls where it's resentencing at which the defendant must be treated as having committed a class one offense. And to some extent, the principles of the state amending the charging instrument are what's driving this. If he had objected before trial, the state could have amended. I don't believe the state can amend the charging instrument after the verdict is in. So that's the reason we're asking for resentencing there. I'm concerned at the slippery slope that the state's arguments on invited error present here. This allows, if the court and parties believe that a first DUI case is mandatory life, this asks for this court to affirm mandatory life for a first DUI. The range of sentencing is set by law. So I'll simply finish here where the state started. He received a class X sentencing range on a class one conviction. That's not permitted by law. And as the state admits, as the state concedes, this was not properly charged. For issue three in the briefs, that's the end of the matter and resentencing is required. Although we maintain a new trial would be appropriate per issue one. And even if issue three doesn't carry the day, resentencing is still required under issue two. But I would ask this to what the knock on effects of the state's argument would be. Thank you, your honors. All right. Thank you, counsel. We'll take this matter under advisement. We do appreciate your arguments, counsel, and the court stands in recess.